**Pearlstein McCullough & Lederman LLP**
Georges G. Lederman
William G. Pearlstein
1180 Avenue of the Americas, 8th Floor
New York, NY 10036
Telephone:  (646) 762-2833
Facsimile:  (212) 732-6323
glederman@pmcounsel.com
wpearlstein@pmcounsel.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | |
|---|---|
| Lynda and William Beierwaltes, | Case No. 17-CV-4755 (KPF) |
| Plaintiffs, | **ECF CASE** |
| - against - | **AMENDED COMPLAINT FOR DECLARATORY JUDGMENT** |
| Directorate General of Antiquities of the Lebanese Republic and the District Attorney of New York County, | |
| Defendants. | |

------------------------------------------------------------x

Plaintiffs Lynda and William Beierwaltes ("Plaintiffs" or "Beierwaltes"), through their undersigned counsel, Pearlstein McCullough & Lederman LLP, bring this complaint ("Complaint"), asserting and seeking declaratory judgment against defendants the Directorate General of Antiquities ("DGA") of the Lebanese Republic ("Lebanon") and the District Attorney of New York County ("DANY"), and allege on knowledge as to themselves and otherwise on information and belief, as follows:

**Nature of the Action**

1.      The gravamen of the Complaint is the DGA's attempted restitution and DANY's seizure of a certain ancient Greek marble Head of a Bull excavated at Bustan Esh-Sheikh (Temple of Eshmun in Lebanon) in the 1960s (the "Bull's Head") of which Plaintiffs are the current owners.

2.      Pursuant to 28 U.S.C. Sections 2201-02, Plaintiffs respectfully seek declaratory relief to declare the respective rights of the parties with respect to the Bull's Head, specifically that (1) the DGA has no right to restitution pursuant to the 1970 Convention on the Means of Prohibiting and Preventing the Illicit Import, Export and Transfer of Ownership of Cultural Property (the "UNESCO Convention"); (2) the applicable statutes of limitations for theft and illegal export under Lebanese law have expired; (3) Lebanon's 1933 Antiquities Law is not enforceable as against the Plaintiffs, because it fails to satisfy due process requirements and was not, at any relevant time, enforced either domestically or internationally; (4) the applicable statute of limitations for theft under New York law has expired; (5) the DGA is barred from recovery based on laches as a consequence of its undue delay in seeking equitable relief to the prejudice of Plaintiffs; and (6) DANY, which does not have any rights of ownership in the Bull's Head, is barred from repatriating the Bull's Head to the DGA in the face of Plaintiffs' rights of ownership and clear title to the Bull's Head.

3.      This action is ripe for declaratory judgment, as there now exists an actual controversy capable of immediate relief under federal law amongst the parties.

## Jurisdiction and Venue

4.      This action arises under the Declaratory Judgment Act, 28 U.S.C. Sections 2201(a) and 2202.  This Court has original jurisdiction over the claims asserted in this action as to the DGA pursuant to 28 U.S.C. Section 1330(a).

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1332, as this is a dispute between a foreign state and citizens of different States, and the matter in controversy exceeds $75,000, exclusive of interest and costs.

6.      This Court has personal jurisdiction over the claims asserted in this action as to the DGA pursuant to 28 U.S.C. Section 1330(b).

7.      Venue is proper in this Court pursuant to 28 U.S.C. Section 1391(b), as the property that is the subject matter of this action is located in this judicial district.

## The Parties

8.      Plaintiffs Lynda and William Beierwaltes are citizens and residents of the State of Colorado.

9.      Defendant DGA is an agency of the government of Lebanon.  It is a department of the Ministry of Culture and is responsible for the protection and promotion of and excavation in all national heritage sites in Lebanon.

10.      Defendant DANY is the law enforcement agency that represents the State of New York in the prosecution of criminal offenses in the County of New York.

## International Law Background

11.      The United States is a signatory to the UNESCO Convention.  The United States implemented the UNESCO Convention by enacting the Convention on Cultural Property Implementation Act ("CPIA"), which became effective on April 12, 1983.

Lebanon—and, by extension, the DGA as an agency of the government of Lebanon—became a signatory ("State Party") to the UNESCO Convention effective November 25, 1992. Although the DGA has asserted a claim for restitution pursuant to the UNESCO Convention, the CPIA governs Lebanon's rights with respect to any claim under the UNESCO Convention.

12.     Pursuant to Lebanese law, the statute of limitations for purposes of asserting a claim for illegal export is one year from the date of alleged illegal export.

13.     Pursuant to Lebanese law, the statute of limitations for purposes of asserting a claim for theft of property is 10 years from the date of the theft. Lebanese law provides that the limitations period may be reset for an additional 10-year period by a valid procedural act relating to a claim or prosecution for theft filed during the initial 10-year period and any succeeding 10-year period.

<b><u>Factual Allegations Common to All Counts</u></b>

**A.     Provenance of the Bull's Head**

14.     Pursuant to an invoice dated November 27, 1996 from a London-based art dealer ("Art Dealer #1"), Art Dealer #1 sold the Bull's Head to Plaintiffs. Based on Plaintiffs' written notes of their communications with the Art Dealer #1 at or about the time of purchase, Art Dealer #1 purchased the Bull's Head from an art dealer in Switzerland ("Art Dealer #2") sometime after Art Dealer #2 acquired the Bull's Head during the mid- to late- 1980s. Based on Plaintiffs' further recollection and contemporaneous photographs, the Bull's Head was imported into the United States sometime between September 19 and October 10, 1996, at which time Plaintiffs took physical possession of the Bull's Head.

15.    In or about August 2006, Plaintiffs consigned the Bull's Head to an art dealer with offices in the United States and Europe ("Art Dealer #3") for sale.

16.    Art Dealer #3 exhibited the Bull's Head at the 2006 Biennale des Antiquaires in Paris, one of the world's most important antique art fairs, and published the Bull's Head in its catalogue prepared for that exhibition.

17.    Upon information and belief, in or about August 2010, Art Dealer #3 sold the Bull's Head to a private collector in the United States ("Collector"), who thereafter loaned the Bull's Head to The Metropolitan Museum of Art (the "Museum") for exhibition and study.

18.    Following examination and research on the Bull's Head, the Museum asserted its belief that the Bull's Head is the object whose photograph appears as "C17" in *The Temple of Eshmun in Sidon Architecture and Inscriptions*, Rolf A. Stucky ("Stucky"), Ancient Art, Supplement 19, Basel 2005 (the "Stucky Article").  Stucky, a Swiss archeologist, published the findings of the two excavations at the Temple of Eshmun in Sidon, Lebanon ("Eshmun"), first by the Turks from 1900 to 1903, and then by a certain individual named Maurice Dunand ("Dunand") beginning in 1963, in the Stucky Article.

19.    Upon information and belief, Dunand was a dual citizen of Switzerland and Lebanon, the latter of which employed him and sponsored his excavation at Eshmun, in which Stucky participated.  The notes to the photograph of the Bull's Head in the Stucky Article suggest that the piece was catalogued among the excavation finds by 1967.

20.    The Stucky Article states that around 600 inventoried and photographed Classical Sidonian sculptures and architectural pieces were warehoused in Byblos, Lebanon by the DGA and disappeared during the Lebanese civil war in the 1980s and 1990s.  The Stucky Article states that, by the time it was published, Stucky had managed to reduce the loss of stolen works by around a dozen statues and reliefs.

21.    Upon information and belief, Stucky acted on behalf of and in coordination with Lebanon in connection with his restitution efforts.

22.    Upon information and belief, the Museum informed Collector and Art Dealer #3 that the Museum proposed to contact the DGA about the Bull's Head and retain possession of the Bull's Head pending a determination as to ownership.

23.    Upon information and belief, Art Dealer #3 informed Collector of the Museum's position, rescinded the sale of the Bull's Head to Collector in or about August 2015, and returned the Bull's Head to Plaintiffs.

**B.    Subsequent Investigation into the Bull's Head's Provenance**

24.    On or about July 2016, Plaintiffs commenced their own independent investigation into the ownership history of the Bull's Head's.  Plaintiffs engaged Lebanese counsel, who searched the publicly available records and court dockets for any claims that the DGA may have previously filed against the Bull's Head.  Upon information and belief, none were found.

25.    Upon information and belief, Lebanese counsel was advised of the existence of two reported thefts of classical Sidonian antiquities from the Byblos warehouse after 1992, neither of which related to the Bull's Head.  The first theft occurred in 2004, in respect of which the DGA filed a complaint in Byblos in 2004-5; a

second theft in 2012 from a museum in Byblos was reported, but Lebanese counsel was unable to locate any filed complaint.

26.    A Lebanese police report dated August 3, 1981 (the "Lebanese Police Report") reported the theft of certain antiquities stored at a fortress in Byblos, Lebanon. Attached to the Lebanese Police Report is a list of antiquities that were allegedly returned to the fortress.

27.    Upon information and belief, none of the 150 or more pieces on the list resemble the description of the Bull's Head, which also was not among the pieces returned.

28.    The Lebanese Police Report is written in Arabic. Upon information and belief, the Lebanese Police Report was never translated into English or French, has never been published or reported to any publicly accessible, recognized international database of stolen art or to any international or foreign police or enforcement agency, and on its face bears no relationship to the finds from Dunand's excavation at Eshmun.

29.    Upon information and belief, it had been the DGA's practice to engrave and then ink a serial number into the artifacts in its inventory.  Both Plaintiffs and the Museum have confirmed that the Bull's Head bears no evidence of any inscription or erasure of a serial number.

30.    By letter dated October 18, 2016, Plaintiffs advised the Museum that they have good and clear title to the piece.  The Museum refused to release the Bull's Head to Plaintiffs.

31.     Plaintiffs requested that the Museum contact the DGA to determine what information, if any, the DGA might have that would shed further light on the ownership history of the Bull's Head.

32.     By letter dated January 10, 2017, the DGA responded to the Museum, stating that the Bull's Head was discovered at Bustan Esh-Sheikh (Temple of Eshmun) in the vicinity of Saida during Dunand's excavations in 1967 and was assigned the same inventory number as that noted in the Stucky Article. The DGA requested that the Bull's Head be repatriated in accordance with the UNESCO Convention.

33.     By letter dated January 24, 2017, Plaintiffs advised the DGA that they have good and clear title to the Bull's Head. Plaintiffs requested that the DGA either withdraw its demand for restitution or provide evidence demonstrating that the DGA's claim was meritorious based on any prior court filings, documentation or reports to any publicly accessible, recognized international database of stolen or missing art.

34.     By letter dated March 6, 2017, the DGA demanded that Plaintiffs restitute the Bull's Head to Lebanon.

35.     Subsequently, Plaintiffs were informed that Stucky, upon information and belief, had seen the Bulls' Head upon its excavation by Dunand in the 1960s; that Stucky had then seen the Bull's Head on the international market in Switzerland in the mid- to late 1980s, together with three other pieces from Dunand's excavation at Eshmun; that the objects from Dunand's excavation at Eshmun were sent first to Beirut and then to Byblos, where they were stored in the fortress located there; and that four bovine heads were excavated during Dunand's excavation at Eshmun, one of which remains in the Byblos warehouse.

36.    Upon information and belief, Stucky mailed to the Art Loss Register (the "ALR") two packages, each of which reported the theft of certain of the objects from Dunand's excavation at Eshmun. The ALR is a leading publicly-accessible, recognized international database of stolen or missing art.

37.    Upon information and belief, the ALR received and acknowledged receipt of Stucky's first package.

38.    Upon information and belief, the ALR never received Stucky's second package and never reported as stolen the objects listed in this second package.

39.    Upon information and belief and according to Stucky, this second package included a reference to the Bull's Head as one of the allegedly stolen objects listed.

40.    Upon information and belief, the DGA knew or should have known that Stucky's second package was never reported to the ALR yet never took action to resend the lost reports or otherwise cure the failure.

**C.    DANY's Seizure of the Bull's Head**

41.    Upon information and belief, on or about July 7, 2017 DANY seized and took possession of the Bull's Head pursuant to a search warrant and seizure order issued by a New York State court.

42.    DANY asserts that the Bull's Head is stolen property under New York State law and seeks to repatriate the Bull's Head to the DGA.

43.    DANY asserts that the Bull's Head was stolen from a storage facility in Beirut during the 1981 Lebanese civil war and thereafter illegally removed from Lebanon.

44.     DANY's assertion is inconsistent with the DGA's assertion as to the contents of the Lebanese Police Report.

45.     Upon information and belief, the facts underlying DANY's assertion, even if accurate, were never published on any publicly accessible, recognized international database.

46.     DANY does not have any rights of ownership in the Bull's Head.

## COUNT I

### Lebanon is Barred from Seeking Forfeiture of the Bull's Head under the UNESCO Convention and the CPIA

47.     Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "1" through "46" of this Complaint with the same force and effect as if herein set forth in full.

48.     Under the CPIA, which governs Lebanon's rights with respect to any claims under the UNESCO Convention, the Bull's Head could not have been imported lawfully into the United States in accordance with Section 308 if it was (1) documented as belonging to the inventory of a museum, public monument or similar institution in any State Party to the UNESCO Convention, and (2) stolen from that inventory after the later of April 12, 1983—the effective date of the CPIA—and November 25, 1992—the date Lebanon became a State Party under the UNESCO Convention.

49.     Upon information and belief, because the Bull's Head was exported from Lebanon prior to November 25, 1992, Lebanon cannot seek forfeiture of the Bull's Head under Section 308 of the CPIA.

50.     Lebanon's right to seek forfeiture under Section 308 of the CPIA is also subject to and cut-off by the right of repose provided in Section 312 of the CPIA.  Upon

information and belief, the Bull's Head became exempt from forfeiture under the CPIA on October 16, 2016, as the piece has been in the United States for more than 20 consecutive years from the latest possible date of importation, and Plaintiffs purchased it for value without knowledge or reason to believe that it was imported in violation of law.

WHEREFORE, Plaintiffs respectfully request a declaratory judgment that the DGA is barred from seeking forfeiture of the Bull's Head under Sections 308 and 312 of the CPIA.

## COUNT II

### Lebanon's One-Year Statute of Limitations for Illegal Export has Expired

51.    Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "1" through "50" of this Complaint with the same force and effect as if herein set forth in full.

52.    To assert a claim for illegal export under Lebanese law, the DGA is subject to a one-year statute of limitations commencing on the date of export.

53.    The one-year statute of limitations for illegal export under Lebanese law expired at the latest sometime in the late-1980s.

54.    Upon information and belief, the DGA has never asserted a claim for illegal export of the Bull's Head prior to its January 10, 2017 letter to the Museum requesting that the piece be repatriated in accordance with the UNESCO Convention.

55.    The DGA is time-barred from asserting a claim for illegal export of the Bull's Head based on Lebanon's one-year statute of limitations.

WHEREFORE, Plaintiffs respectfully request a declaratory judgment that the DGA is barred from asserting a claim for illegal export of the Bull's Head based on Lebanon's one-year statute of limitations.

**COUNT III**

**Lebanon's 10-Year Statute of Limitations for Theft Has Expired**

56.     Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "1" through "55" of this Complaint with the same force and effect as if herein set forth in full.

57.     To assert a claim for theft under Lebanese law, the moving party is subject to a 10-year statute of limitations commencing on the date of theft.

58.     The initial 10-year statute of limitations for theft under Lebanese law applicable to the Bull's Head expired sometime in the mid- to late-1990s, based on the Bull's Head's acquisition by Dealer #2 in Switzerland during the mid-to late-1980's.

59.     Lebanese law provides that the 10-year statute of limitations for theft may be reset for an additional 10-year period by the initiation of a valid procedural act relating to a claim or prosecution for theft filed during the initial 10-year period and any succeeding 10-year period.

60.     Upon information and belief, neither the Lebanese public prosecutor nor any other Lebanese government authority has filed any claim or otherwise taken any valid procedural act relating to a claim or prosecution for theft of the Bull's Head during the initial 10-year period following its alleged theft or during any succeeding 10-year period.

61.    Upon information and belief, the DGA has never asserted a claim for the theft of the Bull's Head prior to its January 10, 2017 letter to the Museum requesting that the piece be repatriated in accordance with the UNESCO Convention.

62.    The DGA is time-barred from asserting a claim for theft of the Bull's Head based on Lebanon's 10-year statute of limitations and reset provisions.

WHEREFORE, Plaintiffs respectfully request a declaratory judgment that the DGA is barred from asserting a claim for theft of the Bull's Head based on Lebanon's 10-year statute of limitations and reset provisions.

## COUNT IV

**Plaintiffs Acquired Good Title to the Bull's Head
Pursuant to New York's Uniform Commercial Code Section 2-403(1)**

63.    Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "1" through "62" of this Complaint with the same force and effect as if herein set forth in full.

64.    New York's Uniform Commercial Code ("N.Y. UCC") Section 2-403(1) provides, in relevant part, that a purchaser of goods acquires all title which his transferor had or had power to transfer, and a person with voidable title has power to transfer a good title to a good faith purchaser for value.

65.    Dealer #1 conveyed good title to the Bull's Head to Plaintiffs, who are good faith purchasers for value.

WHEREFORE, Plaintiffs respectfully request a declaratory judgment that Plaintiffs acquired good title to the Bull's Head pursuant to N.Y. UCC Section 2-403(1).

## COUNT V

**Lebanon's 1933 Antiquities Law is not Enforceable as against Plaintiffs**

66.     Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "1" through "65" of this Complaint with the same force and effect as if herein set forth in full.

67.     Lebanese law is based on civil code and not common law.  Lebanon's 1933 antiquities law (the "1933 Antiquities Law") confers title on Lebanon to archeological finds.  Lebanon's claim to own the Bull's Head is based solely on its 1933 Antiquities Law.

68.     A foreign nation's claim to own an antiquity based on that nation's cultural patrimony law may be enforced against a U.S. citizen only if the foreign law clearly confers ownership of the antiquity on that nation, was published, satisfies due process, and is domestically enforced and not a "sham."

69.     If the Bull's Head was in fact stolen from the Byblos warehouse on or after the incident reported in the 1981 Lebanese Police Report, the 1933 Antiquities Law is not enforceable as against Plaintiffs because (i) at the time of the alleged theft, it was not translated into English or published on any publicly accessible, recognized international database, and (ii) it was not domestically enforced at the time of the alleged theft, or, upon information and belief, when Plaintiffs purchased the Bull's Head in 1996.

70.     Lebanon similarly failed to enforce its 1933 Antiquities Law internationally.

71.     The perpetual "reset" provisions of the 10-year statute of limitations in Lebanon's criminal code violate due process.

14

WHEREFORE, Plaintiffs respectfully request a declaratory judgment that the DGA is barred from asserting a claim for theft of the Bull's Head based on Lebanon's 1933 Antiquities Law.

**COUNT VI**

**New York's Six-Year Statute of Limitations for Theft Has Expired**

72.    Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "1" through "71" of this Complaint with the same force and effect as if herein set forth in full.

73.    To assert a claim for theft under New York law, the moving party is subject to a six-year statute of limitations commencing when the claim accrues, in this case upon discovery of the theft in the 1980s and not upon the Lebanon's belated demand in 2017.

74.    The initial six-year statute of limitations for theft under New York law applicable to the Bull's Head accrued upon the filing in 1981 of the Lebanese Police Report (if in fact it reported the theft of the Bull's Head) or thereafter, when Stucky, as agent of the DGA, allegedly saw the Bull's Head on the international art market in Switzerland in the mid- to late 1980s.

75.    Upon information and belief, the DGA has never asserted a claim for the theft of the Bull's Head prior to its January 10, 2017 letter to the Museum requesting that the piece be repatriated in accordance with the UNESCO Convention.

76.    The DGA cannot extend the six-year statute of limitations for theft simply by deferring the assertion of its claim to its January 10, 2017 letter to the Museum, thereby running afoul of the time period during which it was required to take action.

77.    The DGA's failure to assert its claim in a timely manner has resulted in lost evidence, faded memories and unavailable witnesses, prejudicing Plaintiffs' ability to assert their claim to the Bull's Head.

78.    The DGA is time-barred from asserting a claim for theft of the Bull's Head based on New York's six-year statute of limitations.

WHEREFORE, Plaintiffs respectfully request a declaratory judgment that the DGA is barred from asserting a claim for theft of the Bull's Head based on New York's six-year statute of limitations and reset provisions.

<u>COUNT VII</u>

**The DGA is Barred by Laches from Seeking Repatriation of the Bull's Head**

79.    Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "1" through "78" of this Complaint with the same force and effect as if herein set forth in full.

80.    The laches defense bars a party's recovery as a consequence of undue delay in seeking equitable relief.

81.    Upon information and belief, the DGA has never asserted a claim for the theft or illegal export of the Bull's Head prior to its January 10, 2017 letter to the Museum requesting that the piece be repatriated in accordance with the UNESCO Convention.

82.    Upon information and belief, the DGA failed to register the theft or illegal export of the Bull's Head with the ALR or any other publicly accessible, recognized international database of stolen and missing works of art and antiquities.

16

83.     Upon information and belief, the DGA was or should have become aware that the Bull's Head had gone missing when Stucky, acting on behalf of Lebanon, saw the Bull's Head, together with other pieces from the Eshmun excavation, on the international art market in Switzerland during the mid- to late 1980's.

84.     Upon information and belief, the DGA was or should have become aware of the Stucky Article following its publication in 2005.

85.     Upon information and belief, the DGA was or should have become aware of the Bull's Head following its public exhibition at the Biennale des Antiquaires in Paris in 2006 and its publication in the catalogue of Dealer #3.

86.     The DGA consequently has unreasonably delayed the assertion of its rights and remedies with respect to the Bull's Head and thereby allowed the Bull's Head to circulate in the international art market from Art Dealer #2 in the mid-to late 1980's, to Art Dealer #1, to Plaintiffs in 1996, to Art Dealer #3 in 2006, to the Collector in 2010 and thereafter to the Museum.

WHEREFORE, Plaintiffs respectfully request a declaratory judgment that the DGA is barred from asserting a claim for theft or illegal export of the Bull's Head based on laches.

## COUNT VIII

### DANY is Barred from Repatriating the Bull's Head to the DGA

87.     Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "1" through "86" of this Complaint with the same force and effect as if herein set forth in full.

88.     DANY does not have any rights of ownership in the Bull's Head.

89.     DANY cannot use the laws applicable to search and seizure as a means to circumvent the civil forfeiture statutes under New York State law, which do not provide for *in rem* forfeiture of personal property.

90.     DANY is barred from repatriating the Bull's Head to the DGA in the face of Plaintiffs' rights of ownership and clear title to the Bull's Head.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that judgment be entered in favor of Plaintiffs as follows:

(A)     On Count I of the Complaint, a declaratory judgment that that the DGA is barred from seeking forfeiture of the Bull's Head under Sections 308 and 312 of the CPIA;

(B)     On Count II of the Complaint, a declaratory judgment that the DGA is barred from asserting a claim for illegal export of the Bull's Head based on Lebanon's one-year statute of limitations;

(C)     On Count III of the Complaint, a declaratory judgment that the DGA is barred from asserting a claim for theft of the Bull's Head based on Lebanon's 10-year statute of limitations and reset provisions;

(D)     On Count IV of the Complaint, a declaratory judgment that the Plaintiffs took good title to the Bull's Head under N.Y. UCC Section 2-403(1);

(E)     On Count V of the Complaint, a declaratory judgment that the DGA is barred from asserting a claim for theft of the Bull's Head based on Lebanon's 1933 Antiquities Law;

(F)    On Count VI of the Complaint, a declaratory judgment that the DGA is barred from asserting a claim for theft of the Bull's Head based on New York's six year statute of limitations;

(G)    On Count VII of the Complaint, a declaratory judgment that the DGA is barred from asserting a claim for theft or illegal export of the Bull's Head based on laches;

(H)    On Count VIII of the Complaint, a declaratory judgment that DANY is barred from repatriating the Bull's Head to the DGA in the face of Plaintiffs' rights of ownership and clear title to the Bull's Head;

(I)    Interest, costs and disbursements relating to this action, including reasonable attorneys' fees, incurred in this action; and

(J)    Such other and further relief as this Court deems just and proper.


Dated: New York, New York
       July 11, 2017


                                   Respectfully submitted,

                                   Pearlstein McCullough & Lederman LLP
                                   *Attorneys for Plaintiffs*


                                   By: ___/s/ Georges G. Lederman___
                                       Georges G. Lederman
                                       1180 Avenue of the Americas, 8th Floor
                                       New York, NY 10036
                                       Telephone: (646) 762-2833
                                       Facsimile: (212) 732-6323
                                       Email: glederman@pmcounsel.com

Case No. 17-CV-4755 (KPF)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**LYNDA and WILLIAM BEIERWALTES,**

**Plaintiffs,**

**– against –**

**DIRECTORATE GENERAL OF ANTIQUITIES**
**OF THE LEBANESE REPUBLIC and the**
**DISTRICT ATTORNEY OF NEW YORK COUNTY,**

**Defendants.**

---

# AMENDED COMPLAINT FOR
# DECLARATORY JUDGMENT

---

**PEARLSTEIN McCULLOUGH & LEDERMAN LLP**
641 LEXINGTON AVENUE, SUITE 1524
NEW YORK, NY 10022
(646) 762-2833

*ATTORNEYS FOR PLAINTIFFS LYNDA AND WILLIAM BEIERWALTES*